IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| JOSEPH QUEEN, PRO SE, § | |
| TDCJ-CID No. 735318, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:11-CV-0221 |
| § | |
| JOHN H. ADAMS, ET AL., § | |
| § | |
| Defendants § | |

**REPORT AND RECOMMENDATION**

The instant cause was severed from cause no. 2:11-CV-0040 by Order to Sever issued September 16, 2011.

Plaintiff JOSEPH QUEEN, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendants and has been granted permission to proceed in forma pauperis.

Upon severing plaintiff's claims out of cause no. 2:11-CV-0040, the Court issued an Order giving plaintiff thirty days in which to file an amended complaint. Plaintiff was instructed not to attach to this amended complaint or reference in any way some other complaint. On November 22, 2011, plaintiff filed his amended complaint.

The instructions above notwithstanding, under the section setting forth the relief he seeks, plaintiff requested, in part, that the memorandum originally filed "be applied to this complaint . . . ."

To the extent plaintiff is attempting to set forth an additional claim or claims in the

memorandum, plaintiff was instructed to set forth all of his claims on the Amended Complaint. The Court's instruction was simple and easy to follow. The Court will not review multiple statements of claims seriatim. Consequently, the Court will not consider any claims in the original complaint or the "Memorandum" which are not set forth in the Amended Complaint.

By his rambling and sometimes vague Amended Complaint, plaintiff complains his First, Fifth, Eighth, and Fourteenth Amendment Due Process and Equal Protection rights have been violated

Plaintiff alleges he is confined to Administrative Segregation (Ad Seg) as a member of a security threat group (the Hermanos de Pistoleros Latinos or HPL) until he goes through the GRAD program (which he argues means he has to snitch) or he is released from prison (plaintiff is serving a life sentence on an aggravated kidnaping conviction). Thus, plaintiff says, there is no likelihood of his ever being released from Ad Seg.

In relevant part, plaintiff requests that TDCJ be ordered to "adolp [sic] all rules and regulations governing the Federal Bureau of Prisons," and that he be ordered released from Ad Seg and awarded compensatory and punitive damages.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The Magistrate Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

## SPEARS HEARING

On February 23, 2012, a hearing was conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). At the hearing, plaintiff, having been placed under oath, testified he entered the Texas prison system in 1995 and was assigned to the Clements Unit in August of 2000, where he was placed in Administrative Segregation.

Plaintiff stated he didn't break any disciplinary rules and his gang membership should not be a factor affecting his assignment to Ad Seg. Plaintiff stated he was aware of the procedure to get out of Ad Seg, but did not wish to renounce his gang membership. He complained that being in Ad Seg curtailed any ability to work, attend school, learn a trade, make telephone calls, and have contact visits.

Plaintiff was sworn and testified he was single celled and was kept in his cell 23 hours a day. He said he was allowed out of his cell to recreate four or five times a week, unless there was a staff shortage or he chose not to go to recreation. Plaintiff testified he was allowed to

---

[2] *Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

recreate in a chain link cage outside which had a roof.  He said that, from his cell, he could talk to other inmates, and was eligible for parole.  He said he had no access to television, but could possess a radio, magazines, and books.  Also he could have non-contact visitors once a week.

Sergeant Jimmy Bagby was sworn and testified he worked in the Security Threat Group division, gang intelligence office.  He said he handles the collection and submission of evidence for the prison system regarding gang membership and said such evidence consisted of self-admission, tattoos, correspondence, material found in the inmate's possession or that of another inmate, information from confidential informants, and information from outside law enforcement.  Sergeant Bagby testified that, once he had assembled his evidence, if he thought it was sufficient to confirm an inmate's gang membership, he would forward it to the Regional office where it was reviewed and assessed.  He said if the Regional office decided the information was sufficient to confirm gang membership, it was sent to the STG Management Office in Huntsville for assessment and a final determination.  Sergeant Bagby testified that, if the Huntsville office determined the evidence was sufficient to confirm gang membership, the unit was notified and the inmate was served with paperwork informing him of the fact.  The inmate was then taken before a Captain for a hearing also attended by the two escorting officers, during which the inmate was allowed to present evidence that he was not a gang member.  He stated that the State Classification Committee reviewed the inmate's Ad Seg status on an annual basis to see if the inmate was no longer a gang member, not to revisit the original determination.  He said that, if an inmate complained regarding his gang designation, he would be informed of the procedures for changing it.  Sergeant Bagby testified the GRAD program (Gang Renouncement and Disassociation Program) allowed inmates to renounce their gang membership and be released from Ad Seg upon completion of the program.  The GRAD program

is only open to ex-members and requires the inmate to fill out a questionnaire providing information regarding the gang.

## THE LAW AND ANALYSIS

In order to state a Fourteenth Amendment Due Process claim, a plaintiff must show he was deprived of a liberty interest protected by the Fourteenth Amendment. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005); *Coleman v. Dretke*, 395 F.2d 216, 221 (5th Cir. 2004). Generally, an inmate has no protectable liberty interest or property interest in his custodial classification and, therefore, no liberty interest in obtaining or retaining classification in General Population. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992).

The Due Process clause "does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner,* 515 U.S. 472, 478, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418, 430 (1995). Instead, a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Nevertheless, the Supreme Court has recognized that extreme conditions of confinement in some instances can involve such atypical and extraordinary circumstances that such confinement can implicate a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).

At the *Spears* hearing conducted in this cause, the testimony received from plaintiff made clear that the conditions of his confinement are not atypical and do not impose such a significant hardship on plaintiff as to give rise to protection by the Due Process Clause. Unlike the conditions discussed in *Wilkinson*, plaintiff has frequent contact with a variety of people. He can

talk to other inmates in nearby cells and can have a weekly two-hour non-contact visit from a visitor in the free world.  Plaintiff has no access to a television, but he is permitted a radio, a fan, books, and magazines.  Plaintiff is not confined to a building for twenty-four hours a day, but is allowed outside most days for an hour to recreate.  Moreover, plaintiff's STG status and assignment to Administrative Segregation does not alter his eligibility for parole or mandatory supervised release.  Plaintiff has argued that, if he does not renounce his gang membership, he could remain in Administrative Segregation until he discharges his sentence; however, the indefinite nature of placement in Administrative Segregation, by itself, was not the decisive factor in *Wilkinson*.  Plaintiff's confinement in administrative segregation because of his Security Threat Group classification does not trigger any Due Process protection.

Plaintiff also claims he is allowed to accumulate only a limited amount of goodtime days per month and has a limited trusty status due to his S.T.G. validation; however, such limitations do not constitute a deprivation of a constitutionally cognizable liberty interest." *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995).  The same is true of plaintiff's remaining complaints concerning ineligibility for rehabilitation programs, classroom instruction, college course, trades or job training programs, drug treatment programs, etc.  "Prisons are not educational institutions; there is no federal constitutional right to participate in a prison educational program." *Burnette v. Phelps*, 621 F.Supp. 1157 (M.D.La. 1985).  It is within the discretion of prison officials to determine whether and when to provide prisoners with privileges which amount to more than reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, as long as significant and purposeful differences in treatment have a rational basis. *Fulford v. King*, 692 F.2d 11 (5th Cir. 1982).  The significant and purposeful differences in the treatment of confirmed members of security threat groups clearly have a rational basis and, therefore, do not violate the

Fourteenth Amendment.

Further, plaintiff's conditions of confinement, as he himself describes him, do not result in the deprivation of the "minimal civilized measure of life's necessities" and, therefore, will not form the basis of an Eighth Amendment violation. *See, Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).

As to plaintiff's claim that he is being punished for his political belief in a gang constitution, all in violation of his First Amendment rights, plaintiff is not being punished. As he, himself, has noted his detention is a result of his classification, not a disciplinary infraction, and there is no prison regulation prohibiting plaintiff's belief in a gang constitution. Instead, plaintiff's classification, and the resulting effects on his conditions of confinement are a rational response to the danger presented to institutional security and order by gang violence. Plaintiff's allegations in this respect will not support a claim of constitutional dimension.

All of plaintiff's claims lack an arguable legal basis and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the recommendation of the Magistrate Jude to the United States District Judge that the Civil Rights Complaint filed pursuant to Title 42, United States Code, Section 1983, by plaintiff JOSEPH QUEEN be DISMISSED WITH PREJUDICE AS FRIVOLOUS.

IT IS SO RECOMMENDED.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

ENTERED THIS 27th DAY OF FEBRUARY, 2012.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).